IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KETRA GOINS, | |
| Plaintiff, | CIVIL ACTION |
| v. | FILE NO.: 1:23-cv-02951-SDG |
| MARK SEAGRAVES AND OLD DOMINION FREIGHT LINE, INC., | |
| Defendants. | |

**DEFENDANTS' REPLY BREIF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CARECLOUD REPORT FROM GEORGIA SPINE & ORTHOPEDICS OR FOR FORENSIC INSPECTION**

COME NOW, Defendants and file their Reply Brief in Support of Defendants' Motion to Compel pursuant to Fed R. Civ. P. 34 (a)(1)(A) (allowing discovery of "data compilations—stored in any medium from which information can be obtained either directly, or if necessary, after translation by the responding party into reasonably usable form") and show as follows:

**EXECUTIVE SUMMARY**

Georgia Spine and Orthopedics ("GSO") opposes Defendants' Motion on two substantive grounds: (1) the information sought is neither reasonable nor necessary; and (2) the information sought is protected by HIPAA. Defendants seek evidence

pertaining to the bias, intent and motive of Plaintiff's disclosed causation expert, Dr. Erik Bendiks, and the reasonableness and necessity of the bills issued by GSO. The 11th Circuit precedent makes clear that Defendants are entitled to discover evidence on both grounds.

## **INTRODUCTION**

GSO has consistently argued that it does not maintain a list of law firms or referral partners. In furtherance of their argument, GSO has disavowed prior sworn testimony of an employee (Dena Alexander) because she does not have "a true understanding of GSO's operations and systems." GSO Resp., at 4. However, the evidence disputing GSO's representation to the Court and sworn testimony of their corporate representative is overwhelming.[1] Further, another GSO employee – Chastity Millsaps - testified under oath that she was fired for producing documents in response to a subpoena. A true and accurate copy of the transcript of the deposition of Chastity Millsaps is attached hereto as Exhibit "1".

Incredibly, during the pendency of this dispute, an employee of GSO by the name of Helen Yesuf appeared at undersigned's office to solicit patient referrals.[2]

---

[1] Defendants previously provided the Court with two orders from state courts finding that GSO and Mr. Smith obstructed discovery. Doc. 57, Exhibits "H" and "I".

[2] By way of background, in 2022, the undersigned's firm ("MKB") was hired to represent a truck driver in a car accident case. That driver was injured and pursued a bodily injury claim separately, for which he received treatment from GSO. The driver apparently identified MKB as his lawyer on his intake forms with GSO. As such, a GSO employee emailed MKB to confirm representation

Ms. Yesuf's discussions with attorney Matthew R. Sessions at MKB were recorded and subsequently transcribed. The Declaration of Matthew R. Sessions, transcript of his discussion with Helen Yesuf, and original audio recording are attached hereto as Exhibit "3". Ms. Yesuf's statements make clear that GSO maintains and monitors the identities of referral partners, including law firms. Ex. "3". Ms. Yesuf's visit to MKB further establishes that GSO can search its database by law firm, and as Ms. Yesuf stated GSO "has to be able to tell" where a patient comes from. Ex. "3".

GSO's opposition to Defendant's discovery is a continuation of its pattern and practice of discovery obstruction and abuse. GSO has been shown to fire employees for participating in discovery and conceal evidence. Now GSO has unequivocally made false misrepresentations about the evidence within its control related to its documented relationship with personal injury law firms. These continued discovery abuses warrant a forensic review of GSO's CareCloud software to determine the existence of relevant evidence as outlined below.

## ARGUMENT

**I.    The Evidence Sought by Defendants is Relevant.**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that

---

and asked MKB to "confirm if (GSO) may proceed with scheduling." A true and accurate copy of the emails from GSO to MKB are attached hereto as Exhibit "2".

Defendants are entitled to seek discovery regarding

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The discovery sought by Defendants is supported by clear 11th Circuit precedent and is relevant to the claims and defenses in this action.

### A. The Evidence Sought is Relevant to Dr. Bendiks' Bias, Intent and Motive.

The 11th Circuit has held testimony providing that 90-percent of a treating physician's laser spine surgeries were performed on patients who were involved in personal injury litigation to be relevant (not just discoverable). *Salkic v. Heartland Express, Inc.*, 813 Ged. Appx. 444 (11th Cir. 2020). The 11th Circuit held that such testimony was relevant to both the reasonable value of the medical expenses and the bias, intent and motive of the treating physician. *Id*. at 447. Just as in *Salkic*, the evidence sought here has "any tendency" to make bias more probable than it would be without the evidence because "a jury might infer that Dr. (Bendiks) was incentivized to provide more favorable testimony to (Plaintiff) because he stood to collect from successful personal-injury actions generally and (Plaintiff's) case in particular." *Id*. at 447, citing *ML Healthcare Services, LLC v. Public Supermarkets,*

*Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018).

Here, Defendants seek the same evidence offered in *Salkic* – the volume of Dr. Bendiks' practice dedicated to patients who were involved in personal injury litigation. For GSO's business model to work, its principal, Dr. Bendiks must be able to *reliably* testify in favor of causation for his personal injury patients. A true and accurate copy of the deposition transcript of Dr. Bendiks in a recent case is attached hereto as Exhibit "4". Dr. Bendiks originally testified that only about 30% of his practice was dedicated to personal injury patients. *Id.* at 72:14-73:2. However, later in that same deposition he admitted the number was actually 70%. *Id.* at 72:1 – 76:25. But, Ms. Yesuf opined that essentially **all** of GSO's patients are lien-based. Ex. "3". The evidence sought from GSO here will clarify whether 30%, 70% or 100% of GSO's patients are personal injury litigants and will further shed light on the weight of Dr. Bendiks's financial incentives for providing such testimony. That evidence is directly relevant to Dr. Bendiks's bias.

Dr. Bendiks sees about 2,000 new patients each year. *Id.* at 79:19 - 24. As of November 21, Dr. Bendiks had given an astounding 131 depositions and he admitted that in all of those depositions he had never testified that a patient was not injured in the car accident or other mechanism giving rise to the filing of the lawsuit. *Id.* at 87:24 – 89:19. Despite being the sole-owner of GSO, Dr. Bendiks incredibly denies

having any knowledge as to what revenue GSO derives from its personal injury patients. *Id*. at 79:25 – 80:4. For Dr. Bendiks to continue *reliably* testifying GSO could not allow a jury to see that Dr. Bendiks stands to make millions or even tens of millions of dollars from his litigation-lien practice. That financial incentive that GSO seeks to conceal from discovery is obviously relevant to Dr. Bendiks's bias, intent and motive in rendering his causation opinions for every single one of his personal injury patients. As the 11th Circuit stated in *ML Healthcare*, *supra*:

> Defendant needed only to show that ML Healthcare's payment arrangement had "any tendency" to make bias more probable than it would be without the evidence. See Fed. R. Evid. 401(a). That requirement is easily satisfied here. A jury might infer that Plaintiff's doctors were incentivized by ML Healthcare's referral and payment arrangement to provide testimony that was more favorable to Plaintiff than it otherwise would have been. If so, the jury would have found bias, which is clearly a relevant consideration in evaluating a witness's credibility.

*ML Healthcare* at 1302 – 1303.

Here, the evidence is expected to show a financial incentive in favor of Dr. Bendiks's causation testimony valued in the tens of millions. See, Doc. 57, Exhibits "A" and "B". Such a large monetary incentive would certainly have "any tendency" to make Dr. Bendiks's bias more probable than it would be without that evidence.

The same is true of a stream of referrals from personal injury law firms. If the evidence shows that a majority of Dr. Bendiks' patients are referred from personal

injury law firms, a jury could infer that Dr. Bendiks was incentivized by his referral arrangement to provide testimony that was more favorable to Plaintiff than it otherwise would have been. *Id*. Defendants are therefore entitled to the evidence sought and respectfully request the Court grant Defendants' Motion to Compel.

> **B.     The Evidence Sought is Relevant to the Reasonableness and Necessity of Plaintiff's Claimed Medical Expenses.**

The 11th Circuit has also held that the question of "[w]hether (a plaintiff's medical) expenses were reasonable and necessary is a **critical inquiry** under Georgia law. *Showan v. Presdee*, 922 F.3d 1211 (11th Cir. 2019) citing *MCG Health, Inc. v. Kight*, 750 S.E.2d 813, 816-817 (Ga. Ct. App. 2013). The 11th Circuit has further held evidence of write-downs are admissible:

> Today, we adopt the rule that best reflects the idiosyncratic realities of the healthcare market, avoids reliance on arbitrary factors unrelated to the harm suffered by the plaintiff, and affirms our confidence in juries to resolve challenging questions of fact. We hold that the appropriate measure of medical damages is a reasonable value determined by the jury upon consideration of all relevant evidence. Both the amount billed by healthcare providers and the amount paid by insurers are admissible as relevant to the question of fixing reasonable value.

*Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1308 (11th Cir. 2020). Although *Higgs* was a maritime case, the 11th Circuit expressly stated its holding was not limited to those cases:

> The controversy surrounding this damages question is limited neither to the Southern District of Florida nor to maritime law -- courts around

the country have struggled to calculate medical damages in tort cases when medical bills overstate expenses.

*Id*. at 1310.

As such, Defendants also seek evidence from GSO as to the reasonable value of the medical charges issued to Plaintiff. GSO's bills are the basis for Plaintiff's damages request in this action. The evidence is expected to show that GSO and Dr. Bendiks improperly inflate the bills in an effort to aid their referral partners, Dr. Bendiks personally, and GSO, only to accept a fraction of the amount billed once a case settles. No one disputes that arrangement exists, and this arrangement is the basis of the civil racketeering lawsuit against Dr. Bendiks pending in the Western District of North Carolina. *See*, *Government Employees Insurance Company v. Apex Spine & Orthopedics, LLC, et.al.*, 2024 WL 2820370 (W.D.N.C. June 3, 2024).

Ultimately, the question to be answered is what amount does GSO accept on average in satisfaction of charges issued to patients with bodily injury claims? GSO has previously produced cherry-picked data that does not demonstrate its average recovery percentage from its litigation lien patients. Instead, GSO produced data limited by CPT code, then limited by the year within which the CPT code was billed to Plaintiff. GSO's corporate representative admitted that GSO wrote off **more than $4.6 million in 2021** for bills owed by personal injury patients but could not specify how much. Doc. 57, Ex. "E" at 112:5-22. Likewise, the corporate representative

could not specify how much was written off in 2022 nor 2023. *Id.*

The evidence demonstrating what GSO ultimately accepted and wrote-off is relevant and the jury is entitled to understand the complete picture of GSO's billing practice to resolve the question of the reasonable value of the charges. As noted in *Higgs*, *supra*,

> The long and the short of it is that, as the Indiana Supreme Court has observed, the "complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services." *Stanley v. Walker*, 906 N.E.2d 852, 857 (Ind. 2009). In this environment, as we see it, it would be inappropriate to impose a bright-line rule for the calculation of damages. Rather, in the absence of any legislation clarifying this measure of damage, **it is wiser to leave the ultimate determination -- the reasonable value of medical services received by a particular plaintiff in a particular case -- to the jury, upon its consideration of all relevant evidence, notably including the amount billed, the amount paid, and any expert testimony and other relevant evidence the parties may offer**.

*Higgs* at 1313 – 1314. Defendants have previously requested GSO produce the report demonstrating the amounts billed and paid, and GSO cherry-picked data. Defendants also provided GSO with an opportunity to provide testimony as to the amounts billed and paid and GSO appeared at its 30(b)(6) with an unprepared witness who refused or was unable to provide the requested testimony.[3] Therefore,

---

[3] "Upon notification of a 30(b)(6) deposition, a corporation 'cannot take a laissez faire approach to the inquiry. That is, producing a designee and seeing what he has to say or what he can cover. A party does not meet his obligations under Rule 26 or 30(b)(6) by figuratively throwing up its hands

Defendants only means for obtaining the information is to ask the Court to compel the production. Because Defendants have exhausted all other means for obtaining the relevant evidence, Defendants request the Court grant Defendants' Motion to Compel by ordering the forensic review subject to the reasonable protocol.

## II.   The Evidence Sought by Defendants is Proportional.

Under Fed. R. Civ. P. 26(b)(1) the evidence sought must be proportional. The Advisory Committee Notes with respect to the 2015 amendment to Rule 26 provide, in relevant part:

> Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations.
>
> Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.

Advisory Committee Notes to 2015 Amendment to Rule 26.

Moreover, the Advisory Committee also notes:

---

in a gesture of helplessness.' *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D.Md.2000) (internal quotation marks omitted). 'If the originally designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty.'" *Otero v. Vito*, 5:04 CV 211 DF, 2006 WL 3535149, at *2 (M.D. Ga. Dec. 7, 2006).

> It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors. The 1983 Committee Note recognized "the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved." Many other substantive areas also may involve litigation that seeks relatively small amounts of money, or no money at all, but that seeks to vindicate vitally important personal or public values.

*Id*. As such, the medical provider's monetary stake in the litigation such as the value of the lien, or amount of medical bills giving rise to Plaintiff's special damages should not be given greater weight or less weight than the other considerations.

Here, GSO actively solicits patients from law firms and chiropractors and does not accept health insurance. GSO and Dr. Bendiks have admitted that at least 70% of their patients have personal injury claims requiring causation opinions to secure a recovery. However, the statements made by Ms. Yesuf indicate that potentially 100% of GSO's practice is dedicated to personal injury patients. In other words, GSO has chosen to engage in a business model dependent upon a direct involvement in litigation. That involvement includes holding liens against the proceeds of lawsuits and testifying hundreds of times.

Because GSO has chosen to tailor its business model towards participation in litigation and bodily injury claims any concerns with respect to proportionality should be resolved against GSO. GSO and Dr. Bendiks have very likely generated

revenue to the tune of tens of millions of dollars by providing causation opinions to support bodily injury claims held by their patient-plaintiffs. As such, GSO cannot reasonably argue that discovery as to the nature and scope of Dr. Bendiks' potential bias is dis-proportional since Dr. Bendiks (and GSO) have long known that their business model requires participation in litigation and discovery.

### III. The Evidence Sought by Defendants is Not Privileged nor Prohibited by HIPAA.

Defendants addressed the purported privacy concerns raised by GSO in their Motion. To briefly reiterate, HIPAA provides that disclosures pursuant to Court order are "permitted disclosures." 45 C.F.R. § 164.512 (e). To clarify, Defendants have no interest in obtaining patient names. Rather, under Defendants proposed protocol, the only individuals who would be capable of reviewing patient names are the Court and the independent expert who will review and obtain the data and provide the same to the Court. GSO's production is also subject to a protective order thus further minimizing any alleged privacy concerns.

Finally, because the vast majority (if not all) of GSO's patients have bodily injury claims, all of those individuals have put their medical condition at issue thereby waiving any privacy objections. *Harris v. Tenet Healthsystem Spalding, Inc.*, 322 Ga.App. 894, 896 (2013) ("once a plaintiff puts her medical condition at issue in a case, she waives her right to privacy with regard to any medical records

that are relevant to that medical issue."); *see also*, *National Stop Smoking Clinic-Atlanta, Inc. v. Dean*, 190 Ga.App. 289 (1989) (affirming trial court order compelling clinic to produce the names and addresses of all persons who received treatment at the clinic). Accordingly, GSO's objections on the grounds of privacy are without merit.

Respectfully submitted this 23rd day of July, 2024.

                                             MCMICKLE, KUREY & BRANCH, LLP

                                             */s/ Paschal Glavinos*

| | |
|---|---|
| 217 Roswell Road, Suite 200 | KEVIN P. BRANCH |
| Alpharetta, Georgia 30009 | Georgia Bar No: 111839 |
| Telephone: (678) 824-7800 | PASCHAL GLAVINOS |
| Facsimile: (678) 824-7801 | Georgia Bar No.: 817127 |
| kpb@mkblawfirm.com | ***Attorneys for Defendants*** |
| pglavinos@mkblawfirm.com | |

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CARECLOUD REPORT FROM GEORGIA SPINE & ORTHOPEDICS OR FOR FORENSIC INSPECTION** complies with the font and point selections approved by the Court in Local Rule 5.1C. This pleading has been prepared in Times New Roman, 14 point font.

This 23rd day of July, 2024.

                                                   */s/ Paschal Glavinos*
                                                 For the Firm
                                                 *Attorney for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that on this date I have electronically filed the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CARECLOUD REPORT FROM GEORGIA SPINE & ORTHOPEDICS OR FOR FORENSIC INSPECTION** with the Clerk of the Court using the *Pacer* CM/ECF system, which will automatically send a notification attaching same thereon to all counsel of record as follows:

Danielle Bess
South Atlanta Injury Lawyers
157 S. McDonough Street
Jonesboro, Georgia 30236
dbo@southatlantainjurylawyers.com
*Counsel for Plaintiff*

Alex M. Smith
11650 Alpharetta Hwy, Suite 100
Roswell, GA 30076
Alex.smith@gaspineortho.com
*Attorney for Georgia Spine & Orthopedics*

This 23rd day of July, 2024.

/s/ Paschal Glavinos
PASCHAL GLAVINOS
For the Firm